First case this afternoon is 4-12-0-7-8-1. Pister versus Matrix Service Industrial Contractors, Inc. For the appellant is Ray Moss, do I hear you? And, excuse me, Amelia Burgas? Is that pronounced correctly? For the appellee is Zach Vaughn, do I hear you sir? And Melinda Colross? Will you folks be dividing up your arguments? So, who will be making the arguments for the appellant? I will not. Okay. And for the appellee, who will be making the argument? I will not. Okay, Ms. Burgas, you may proceed. May it please the court, opposing counsel. My name is Amelia Burgas, and I represent the plaintiff appellant in this matter. There are a number of issues the plaintiff appellant has raised in this case, dealing with errors made at the trial court level that necessitate that the judgment in favor of the defendant be reversed and a new trial be granted. Before delving into the intricacies of all those issues, however, I would like to briefly discuss the standard of review in this matter to ensure that the plaintiff's position with regard to the standard of review is clear. With regard to the first two issues, I do not believe there is any dispute between the parties. With regard to summary judgment, the review, of course, is de novo. With regard to the admission or denial of evidence, the standard of review is, of course, abuse of discretion. But when it comes to the jury instructions, there are actually two standards of review that this court should base its opinion on today. The first of those is the abuse of discretion, and this deals with whether or not the trial court properly refused or accepted any individual instruction. Whether or not they did so properly is an abuse of discretion standard. Both of the parties discussed this standard in their brief. However, a plaintiff would assert that when it comes to whether or not the jury instruction, especially the additional jury instruction given with regard to whether or not Mr. Stoltz was in the course or scope of his employment, the standard of review there with regard to whether or not that wording of the instruction was an accurate reflection of the law, the review is de novo. So there are two standards of review there. And this is important because this is the foundation upon which this court today will make its decision. And the veracity of the decision, of course, is only as good as its foundation and the framework guiding it. And that ties into why it is so important and why it's so prejudicial to the plaintiff that the jury instructions were not properly given. Because the jury instructions are the foundation of the jury's verdict. If the jury is not properly educated as to the law, not properly instructed as to the burden they must place on the different parties, then they cannot render a verdict that is free from doubt. And we can be assured that the parties did not receive a fair trial. With regard to power of employment boundaries, there were errors throughout this trial. Actually, even before the trial stage began. And one of those, which is exceptionally important, is with regard to what theories of law the plaintiff could pursue at trial. And this gets to the issue of summary judgment. And of course, as the brief points out, there are two concerns with the summary judgment order here. One, which is the beginning of the brief, is that there was no explicit order that bound the plaintiff. At any point in time until trial, when the trial court said, no, I have granted summary judgment in the defendant's favor, despite a very clear record that summary judgment was denied. This is troubling, because the parties have to be entitled to rely on. It appeared that the court had made a mistake, and so said, when it noted that apparently it had not entered a specific order granting summary judgment that would say it was intended to do so. Was it an incumbent upon the plaintiff at that point to say, wait a second, judge, that wasn't the situation at all? Perhaps, your honor. Not perhaps. Was it an incumbent upon the plaintiff not to let that go? I mean, you're here arguing, oh no, that wasn't the situation at all. That apparently the trial judge never intended to grant summary judgment. Shouldn't you have made that complaint and made that point then to the trial judge? No, your honor, and this is why. Why? Because the trial court never said those words at the pretrial conference. It never said, I misstated before, I'm revising my earlier rule. It said summary judgment has been granted in favor of the defendant, and it did so quite strenuously. And what was that last part? Quite strenuously. Strenuously. Then your position was, no, you never granted summary judgment in favor of the defendant, and that's a mistake to so indicate. That's what you're arguing to us now. Yes, your honor. Why didn't you argue that to the trial judge then? When it comes to a sua sponte grant of summary judgment, or a sua sponte comment of any kind, or ruling from the court,  Because it's not a discussion at that point in time. Well, counsel, you're arguing before some 30 years worth of trial court experience. We understand how this works. Those concerns you just expressed are particularly appropriate before a jury. This is not a jury discussion. This is a matter where the court is talking about a summary judgment matter, and I'm sympathetic when judges misspeak. I've done it myself often enough. And I expect if I have misspoken, or I've mischaracterized the record, for it to be pointed out at that time in a timely fashion, not to be raised for appeal and let the matter slide. Well, it was raised, your honor, in the post-trial motion. No, not in the, no, no. Let me be more clear. Right then, you're telling us that the judge mischaracterized what he had done. He never had granted, hey, judge, you never granted summary judgment. What are you talking about? That remark was never made, was it? No, your honor, it was not. And, counsel, doesn't it go beyond not bringing it to the court's attention when you consider the fact that the attorney then said, Judge, we're well aware of your ruling, implying we understand what you ruled and we understand what that means and what will be presented to the jury. Yes, your honor. And I did see the defendant had referred to that segment of the post-trial, I apologize, the pre-trial hearing with regard to that, and I reread it because I was surprised. I did not believe that that was an accurate reflection, or at least it was not the way I interpreted it. When I reread it, I interpreted it to mean, Yes, your honor, we are aware of your prior comments. Clearly, plaintiff was aware of the court's prior comments, stating an uncomfortableness, an uneasiness, with transferring workers' comp precedent directly on point to a respondent superior case. Everyone was aware of that. And in my rereading of the transcript, that is how I interpreted that comment. Of course, counsel. A generous assessment, counsel, but in any event, the record is clear that there was no complaint about how the trial judge was misconstruing what the court earlier had done. Isn't that right? Yes, your honor. Why should we entertain a complaint now? Because it goes to the very heart, again, of a sua sponte comment. And I understand, your honor, of pointing out. What do you mean it goes to the heart of a sua sponte comment? What stopped? Let me be real clear. You're suggesting by that remark that somehow, assuming that's what plaintiff's counsel thought, he was stopped or constrained from making that point? And if so, what did so? What stopped? Because at that point, the court made a ruling. It was time to move on for the parties. Well, that was it. Gee, you know, I didn't realize you had granted summary judgment before, but now you say you have. Well, I guess that matter's over. And that's it? In this instance, that was the strategy decision made. That the best course from that point forward was to try to move forward, salvage the case. There was an alternate theory upon which plaintiff could prevail and plaintiff believed it would prevail. And so it was time to move on. Some trial courts are very tolerant to the notion of being questioned constantly about whether their rulings are appropriate. Others prefer to say, this is the ruling, let's move on. Were you the trial lawyer at this point? No, Your Honor, I was not. So you weren't the one who made the comment that Justice Holder White mentioned? No, Your Honor. I was present, however I did not make that comment. Whose comment was that? I believe it was made by Mr. Reagan. Mr. Reagan? Yes. Yes, Your Honor. A shrinking violent trial lawyer who just couldn't be called upon to point out the inconsistency in what the judge had just said. Your Honor, again, I interpret his words to mean something else. The court, of course, reading the record may come to a different conclusion. However, it does not change the fact, even if summary judgment were properly granted, or plaintiff has not properly preserved that for this court to look at whether or not it was a sua sponte grant of summary judgment, the plaintiff was still bound by this ruling and was completely barred from pursuing a theory of recovery under Illinois law. That was a basic theory that was frequently, of course, as the trial court noted, frequently considered in workers' compensation cases. But by doing this, the trial court essentially said that if you're in a respondent superior case, there is no exception to the going and coming rule. That is an exceptional statement. Well, he said, if I understand correctly, the traveling employee principle doesn't apply to respondent superior cases with the exception of workers' compensation cases? I believe that is a correct summary of the trial court statement. Why isn't he right? Because when it comes to just the general principles of agency and employee law, any time an employee is actuating for the purpose of the employer and not motivated by a personal interest, just that general law places him or her in the scope of the employment. We would be the first court to so hold, would we not? I do not believe so, Your Honor. What other court is so held? When it comes to prior precedent, the Illinois Supreme Court. Referring to traveling employees. No, I'm talking about not in the workers' compensation context. Yes, Your Honor. I'm talking about Pine v. Whitmer. That was a respondent superior case. Which case was that? Pine v. Whitmer. Go ahead. That was a respondent superior case considered by the Illinois Supreme Court, and the issue there was whether or not the employee agent was on a frolic at the time of the alleged negligence. Which is different than traveling employee. It is within traveling employee. He was traveling at the time of his alleged employment, and the question was whether or not he deviated from his traveling, turned it into a personal errand, because there was some evidence that at some point in time he had stopped a drink. Well, actually there's strong evidence that at some point in time he consumed alcoholic beverages because he was over the legal limit. So the question there was, could the trial court as a matter of law determine that he had engaged in a frolic and was no longer in the course of his employment because of that? And that's your example of the use of the traveling employee? Yes, Your Honor. Because it involved travel. Also, the Pine v. Whitmer Court talked about the law that surrounded his decision, and it referred specifically to the traveling employee theory of liability. It said that your traditional going and coming rule says when you are going to work or on your way home from work, you are not in the course of your employment, except if you are traveling away from your normal course of employment. With regard to the facts of this case, it is even clearer that Brian Stultz was in the course of his employment at the time he was traveling. He had no reason to travel to Illinois from Ohio other than to perform his job duties. Keep in mind, Matrix Service Industrial contractors had no business unless they could find employees who were willing to travel long distances to accomplish their work. Brian Stultz, over the course of several years, traveled frequently and constantly. He went to places like Georgia, Rockford, Illinois, Champaign, Illinois. He went to Michigan, Florida. He was constantly traveling because he could not perform the work he was hired to do unless he was on site. As a result, in the workers' compensation arena, the courts have said when you have an employee that travels and you place them in harm's way, because we all know that the interstate and our roadways are one of the most dangerous places we all will go at any given time, the workers' compensation arena, workers should be protected when they do this for their work. That same rationale should apply to respondents superior. When a company earns its living by sending employees out in an automobile, which is a piece of machinery that has enormous potential to cause harm, they should be held accountable for that. It is part of their work. It is part of how they earn their living. And here I'm talking about the corporation. And the reason why, at least when it comes to whether or not plaintiffs should be able to avail themselves of this theory, that it was wrong for the trial court to say absolutely not. And for further support of that, I'd like to point out some of the procedural posture of the Foucault case, which was cited at length by the defendant for this proposition that the traveling employee theory of liability has no real meaning outside the workers' compensation context. That is more or less a direct quote, a little bit of paraphrasing from what the trial court in that case said. However, that was what the trial court said when tendered a jury instruction by the plaintiff, which was trying to specifically instruct the jury on traveling employees. And the trial court said no. Or at least what we know from the record, the trial court said no. They are adequately informed of this possibility and of the idea that the employee could be in the course or scope of his or her employment because of travel alone, merely by the IPI instructions. I think that's something that's gotten lost up to this point, is that in Foucault, the plaintiff was allowed to make that argument. At no point in time was the plaintiff told not to make that argument. And of course, as has been noted in the briefs, the appellate court did not reach that issue at all. It determined that with regard to the jury instruction, it had not been properly preserved for the appellate court to review. So the appellate court, while it discussed the trial court's language and in a limited way discussed its ruling, it did not pass judgment on that in any way, shape, or form. Furthermore, in this case, the trial court itself, through its giving of jury instructions and its decision to deny the IPI instruction about employment and the employment relationship, the agency instructions 50-06-01, says something which is very profound. It said, I cannot give this instruction because if you read this, which the trial court during the post-trial motion admitted was a valid statement of Illinois law, said if you read this instruction, the jury can find that he was in the scope or course of his employment because he was a traveling employee, as has been defined by the courts. That tells us that general agency principles, that the trial court refused this instruction because they believed the jury could reach that conclusion. And if that's a valid statement of Illinois law, then it should be valid for the plaintiff to pursue that theory of liability. That is what we're getting to. Whether or not the plaintiff would prevail is another question. But the idea that the plaintiff was not even allowed to pursue, that the fact that Brian Stoltz was in that car for one reason and one reason only, was never discussed in this trial. And that is why not allowing that evidence necessitates this court to reverse the trial court's judgment in favor of the defendant. Because absent that evidence, it became much more difficult for a variety of reasons, some of which are discussed in the briefs, but it became much more difficult for the plaintiff to prove its case. And I think that there are very few people who would argue that if the plaintiff had the ability to raise this theory of liability, I think there are very few people who wouldn't say that a jury could reasonably return a verdict in favor of the plaintiff. And some would even go so far as to say that by the end of evidence, the court would be compelled to grant a directed verdict in favor of the plaintiff. Because the evidence was so strong. There was no deviation. There was no fraud. There was no other reason for Brian Stoltz to be in that car that day. But even without that evidence, the plaintiff pursued its case. Well, short of the traveling employee doctrine, lawyers aren't liable for workers traveling to work sites, are they? I apologize, Your Honor. Would you mind repeating that? Short of the traveling employee doctrine applicable in workers' compensation cases, employers are not liable for workers traveling to work sites, are they? Under the general coming and going or going and coming rule, no, they are not. However, there are a few other scenarios where an employee could be in the course or scope of his or her employment during that travel, but it has nothing to do with the travel. So there's a correct statement that the travel alone only comes into play if a traveling employee is available. However, in this case, plaintiff argued that Brian Stoltz also was in the course or scope of his employment because he was doing what plaintiff referred to as a special errand. He was carrying equipment on behalf of the employer. And that was a second alternative way of proving that Brian Stoltz was in the course or scope of his employment. And since that was the only theory that plaintiff was able to pursue, then the testimony of the limited people who knew about what Brian Stoltz was doing that day became so very, very important and why the redaction of some testimony is so problematic. And, of course, I'm referring to the testimony of Brian Stoltz's family members and how it was redacted to remove what the court found to be prejudicial information about his drug use. Keeping in mind, however, this was not illegal or illicit drug use. This was a prescription medication, oxycodone, that he had taken that day. And it created, however, the redaction of that evidence. Taking out the oxycodone had an inadvertent side effect, that it allowed the court to create this impression and the defendant to capitalize on this impression that the Stoltz family was having a conflict with the insurance coverage with regard to his life insurance policy about whether or not Brian Stoltz was working at the time of his death. When in reality, looking at the evidence, there was no question, or at least they did not question it. And, of course, the standards that the insurance company used and whether or not they determined he was working, we have no idea what they were. Most likely had nothing to do with Illinois law or the concept of agency law. So, at the end of the day, what happened is there was a falsehood in the courtroom. Unintentional, perhaps, and well-meaning. What was it? I'm not sure I follow. Because without the evidence of oxycodone, and that that was the reason the Stoltz family had to petition for coverage for the life insurance policy of Brian Stoltz, absent that information, the testimony was limited. So that all they heard was that the family tried to prove that he was working. They missed entirely that the reason there was a back and forth, the reason there was an argument, is because the family had to prove he had a prescription for the medication. And that once they did that, the policy was paid. The jury never had heard either of those two items. Thank you, counsel. Your time is up. You'll have an opportunity to address this again in rebuttal. Thank you. Ms. Kollross. May it please the court. Counsel. I think your honors have seized on really the central issue here, which is the story that's coming up on appeal is somewhat different than what happened at the trial court. There was not a sua sponte surprise ruling about summary judgment on the traveling employee issue. The trial judge said this is something for the appellate court to decide, whether or not they wish to create this traveling employee exception to the otherwise body of law that when you are traveling to the job site and leaving the job site to go home, you are not acting in the scope of employment. Were you trial counsel? I was not. I'm appellate counsel. What happened at the trial level? How is it the trial judge makes his findings and then apparently your position would be misspeaks with regard to the docket entry that would show the motion for summary judgment denied in total, as opposed to denied in part and granted in part. As I asked plaintiff's counsel, when the matter, the judge corrects himself and just essentially stands mute, how is it the defense counsel stands mute when the trial judge makes this apparently erroneous ruling? Well, you have to remember the motion for summary judgment that defense counsel made, there were two prongs to that. Motion for summary judgment on liability under traveling employee and under special errand. The trial court says, we agree, I'm not going to create law on importing traveling employee into tort law from the workers' compensation cases, but I disagree on special errand. I think there's a question of fact. So I'm denying your motion for summary judgment because special errand theory, you're going to go forward and be able to present that at trial. Okay, so that's what the trial court has done. They come in for the pretrial conference. We're disappointed. We move for summary judgment again, actually shortly before trial. Defense moves for summary judgment on the special errand issue because that's the only one left. The pretrial conference rolls around and the court says, because of the ruling that I made, special errand is the only theory that's going to go to the court. And the plaintiff says nothing and defense counsel says nothing because nobody is surprised. That is consistent with what the judge has stated on the record is his ruling, traveling employee out, special errand in. So I don't think it was incumbent upon the defendant to say there's a mistake or I don't understand. This was precisely what they understood the record to be. Are we talking about a summary judgment matter at all or is this a pretrial evidentiary ruling? Well, I think you have possibly elements of both, but whichever way you look at it, I think the burden was on the plaintiff at that point if they truly were surprised, misunderstood, or prejudiced in their ability to prepare for trial, they needed to step forward and object. The defendant was not surprised. This is exactly what the defense had prepared for, defending on special errand, because that's what we understood the court to have ruled on. And for plaintiff's counsel to not only not object, but then to affirmatively state, as you've quoted and I've quoted in the brief, I'm acutely aware that you ruled against me on traveling employee. We're not arguing traveling employee. We're only talking about special errand. I don't see how you can come up on appeal and say this was a surprise ruling and we've somehow been prejudiced. Are you characterizing the trial court's decision now as a grant of a summary judgment? I think there was a partial grant of summary judgment and I think there was also a pretrial ruling saying that traveling employee is not coming in. I think the record sustains both. So I think you have two separate elements there and I think in both cases the record supports what the court has done and that should be affirmed. But in any event, your position is no one's surprised that the judge had ruled out the special employee? No. Or the traveling employee. Yes, the traveling employee. No, this was exactly what both parties knew well before trial and what they prepared for. And I do, I don't want to belabor these points because, again, I think the court is very familiar and understands the principles. Again, plaintiff's counsel conceded below. The trial judge specifically asked, do you have any Illinois law on point, as you've just asked here, any Illinois law on point where the traveling employee doctrine has been used from the worker's context and brought into a tort law respondent liability situation? And plaintiff's counsel said no. And the judge said, okay, I'm not making that law now. Now here on appeal, all of a sudden, Pine v. Whitmer actually establishes that. Well, again, if Pine v. Whitmer did, then you should have said that to the trial court. You shouldn't have said, no, there's no Illinois law. And I don't think any fair reading of Pine v. Whitmer says that they're importing traveling employee into tort law. It just doesn't say that. The Focori case, what plaintiff's counsel has said here is somewhat true. It was a jury instruction issue. And the court did find it waived. But the appellate court did actually go on to the substance as well. And they say, although we found it waived, nevertheless, we're satisfied the instructions given to the jury adequately conveyed plaintiff's theory and properly instructed the jury as to the applicable law. So, again, they're saying the fact that you didn't get a traveling employee instruction was correct under the law. So they did reach the merits, even though the issue had been waived. So, again, there's nothing inconsistent. It's not been misrepresented. We've got a uniform body of Illinois law stating that workers' comp, here you go, you can have traveling employee, tort liability, respondeat superior liability, it doesn't come into play. There was talk about the jury instructions and about how the agency instruction needed to be given the instruction that was refused because it was an accurate statement of Illinois law. But what the trial court did is not say that it wasn't an accurate statement of Illinois law, which it is. It's an IEPI standard instruction.  So, again, it's not been misrepresented. And that the jury could have been confused. Not that the jury would have rightfully found under those instructions that on these facts Stiltz was acting in the course and scope of his employment, but that they could have been confused and they could have erroneously thought that merely traveling to get to the worksite in Champaign was enough to put him in the course and scope of employment, which it wasn't. So the judge said, this is a correct statement of the law, but it doesn't apply to these facts. I don't want the jury to be confused, so I'm going to give an instruction that's particularly tailored to the facts in front of me, which says he must be on a special errand. The plaintiff was not deprived of proving their case, but it needed to be proved on the facts before the court. And that was if they found that he was on a special errand, then he could have been deemed in the course and scope of his employment while he was traveling. But the travel alone wouldn't get you there. And so the trial court acted correctly in trying to prevent confusion and is now being criticized after the fact when really he was being very conscientious in what he did. And so if the court has no further questions, we'd rest on our briefs in asking that the decision be affirmed. Well, I have an additional question about the instructions. I'm not sure what about the standard IPI instruction was not correct if it were given. It's a statement of general agency principles, and it is correct in the ordinary context. But here the allegation was that merely traveling from Ohio to Champaign was going to put Mr. Stoltz in the course and scope of his employment. And the court said no, that would be traveling employee. So on the facts of this case, we are going to give a tailored instruction specifically talking about special errand because that's what the court had ruled. The only way they would be able to get the travel to qualify as course and scope of employment would be to show special errand. And that's actually pretty analogous to Pine v. Whitmer. Do you object to Pister's first instruction on this point? I believe the defense objected to both of those standard instructions, and that's why the court refused them. And you claim that the instruction wasn't correct? No, not that it wasn't a correct statement of Illinois law, that it wasn't correct to be given in this case on the facts before it because you don't consider instructions in a vacuum. Every IPI instruction is a correct statement of the law, but you give every IPI instruction in every case? No, you pick the ones that are applicable to the facts before you. And the court found that the general agency instruction was not applicable to the facts before it because they were arguing a special circumstance, a special errand, that that was going to get them outside the ordinary coming and going rule. And based on that theory, the judge gave an instruction that was specifically tailored to that special errand theory. Well, it's troubling, counsel, to see changes in IPI instructions and the notion that, well, it's a general statement of the law, and it's generally good, but gee, we have different than unusual facts. But even the plaintiff wanted to do that. Plaintiff wanted to have the general instruction given, and then they wanted to have a limiting instruction given that would qualify the general instruction to take out traveling under the ordinary coming and going rule and to say, well, you have to find a special errand. And so what the judge did is said, instead of giving the general IPI and then a limiting instruction to remove this traveling as just part of the coming and going experience, he said, no, I'm going to give one instruction that's going to just limit it to special errand. So plaintiff was not arguing just give these general agency instructions. They were actually going to suggest that a limiting instruction to take general travel under the coming and going rule out. So they were arguing one position. We argued something else, and the judge said, this is what I'm going to do. I'm going to give an instruction that's specifically tailored to the theory that plaintiff is pursuing on this trial and the evidence that they've introduced at this trial. Special errand is not that unusual a concept in Illinois tort law, is it? It's not. So it's your position, apparently, and what you're arguing in trial court is that there needs to be a special agency instruction encompassing that doctrine? Well, I think it would probably be helpful to have that, and maybe that's something that the IPI committee should consider. I think that might be very helpful. It's certainly nicer and cleaner when there is an instruction on point. So you believe 5006, which was what they had tendered, wasn't adequate to convey the special errand doctrine? Not only do we not believe it was adequate, that it could have led to juror confusion, but they believed it as well. That's why they were going to introduce a limiting instruction to try and eliminate confusion that would be created from it. Well, how about keeping 5006 and using a limiting or a special additional instruction on this special errand doctrine? That probably could have been done. But that was not our obligation. What was the court gave? Wait a second, counsel. If you're objecting to their tended instructions, as a trial judge for a long time, my response would be, good point, counsel. What's the alternative you have for me? Because I wasn't there, I do not know precisely how the trial judge came up with the special errand instruction that was given. Well, does the record show that, in addition to your objection, that you tended an alternative? I don't believe so, but if the trial judge says, how about this, and we think that's okay, I think that's sufficient. If the trial judge says, I think this language will address the special errand theory, and we agree, I think we're okay. Now, if we came up here and we're arguing it was error, I think we'd have a big problem. But we agreed with the instruction that the judge gave, and I think that's sufficient on our part to say, that sounds good to us and we're okay with that, regardless of how that language actually came to be. Maybe it was informal discussions and the judge said, how about this? I mean, you know those jury instruction conferences. Sometimes that goes back and forth between the parties, and then somebody makes an announcement, in this case the court, says, here's what I'm thinking of, and we say okay. I think that's all right. I don't think there's any problem with us doing that. And as long as the judge accurately stated the law, there's no reversible error. If the instruction that he gave about special errands accurately informed the jury, and accurately instructed them as to the law in Illinois, there's no reversible error. And that is our position here. No reversible error. Thank you, Counselor. Thank you. Ms. Boreas, any rebuttal? Thank you, Your Honor. Counselor just said something relatively provocative, which is if there is... Speak up a little bit, please. I apologize. Counselor just said something relatively provocative, and that is this idea that if the additional instruction accurately stated the law, there was no reversible error. But of course, the additional instructions did not accurately state the law. It changed the burden of proof. It introduced this notion that Brian Stoltz had to be affirmatively instructed by his employer to do this special errand. Well, let me ask it this way. The trial court said that the special errand doctrine was the basis upon which the court was going to permit your case to go to the jury, that you had to establish the special errand doctrine. Isn't the defendant correct and the trial court correct as well that the general statement of 50.06 does not convey the law regarding the special errand doctrine to the jury? I disagree, Your Honor. That general proposition of Illinois law does convey that when combined with the evidence that is allowed to the jury and the argument made by the counsel. All of those items together create the atmosphere for the jury to come to the correct legal conclusion. That is why we have IPI instructions that are general statements of Illinois law. Now, the trial court in this case may have said special errand is what's guiding my decisions as I determine what evidence is admissible, as I determine what arguments the counsel may set forth. But when it came to instruction of the jury, there was no need and the court should be hesitant in allowing the trial court to get out writing its own instructions because it's so full of problems. And the recipe to allow for the juries to be instructed improperly, it is far, far better. And this is why the Illinois Supreme Court rules are so strong, that the IPI shall be used unless it is not an accurate statement of Illinois law. And in this case, I'd like to point out that at the post-trial motion, the trial court judge said it was error not to give this instruction. He stated that he should have given this instruction. Well, as I'm reading it, I'm troubled by the second sentence. An agent is acting within the scope of his authority if he is engaged in an activity which has been assigned to him by his principal, or if he is doing anything that might reasonably be said to have been contemplated as part of that activity, which benefits the principal. It seems to me that's not a correct statement of the special errand doctrine. It is a broader statement than the special errand doctrine. I think that's right. It's broader, and if the court is correct that the special errand doctrine is the means by which you can advance this case to the jury, the jury, by giving this general instruction, would not be so informed. But in this case, and in cases like it, there is a way to uncover any impropriety, to discover whether or not the jury got it wrong. And that's the special interrogatory. But the special interrogatory deals with some other concepts. The first general concept is the jury ought to be instructed correctly on the law that they are to apply. And if 50.06 doesn't, is it broader than the special errand doctrine, why should it be given to the jury? Because it is a correct statement of general agency law. And I know, I apologize, that sounds like a... I have to confess. I was chairman of the IPI Criminal Committee for five years, Counsel. I spent a lot of time with IPI instructions. And, you know, I know like the civil counterparts, these folks do the best they can to try to get this accurate. But, you know, they're dealing with general concepts, and one of the things we did in the Criminal Committee is look for guidance from the appellate court on what instructions need to be added or changed. And it's maybe this should be the case where you say, By the way, you don't have a special errand doctrine instruction, and you should, and this one doesn't really fit. Why should we say that? Well, maybe it's useful then to look at whether or not the IPI has adopted instructions with regard to detour or fraud. And the IPI comments state that the committee has decided not to do that, that they believe the general instructions are best, and then to allow the evidence admitted at trial, and the arguments made by counsel to fill in those gaps, as opposed to trying to tender an additional instruction that would encompass everything or not be too narrow in scope. That is the alternative concern here, is that if the trial courts are allowed to begin crafting their own instructions, they will be far too narrow. Well, you're clearly right on that. It's a nightmare when you see what's happened, and you're right. But the instructions pull off a shelf and microwave them already and all that, have to be accurate for the particular factual context to be given to the jury. And I'm just concerned that assuming that the court is correct, that the special doctrine or special employee doctrine only applies here, that this instruction would not correctly communicate that. Anyway, counsel, thank you for your remarks. And we'll take this matter under advisement and be in recess for a few moments.